A07A1214. TAYLOR v. AMERICASMART REAL ESTATE, LLC
et al.
(651 SE2d 754)

PHIPPS, Judge.

Darrell Taylor brought this personal injury action against AmericasMart Real Estate, LLC (AmericasMart), and Defender Services, Inc. (Defender). AmericasMart owns commercial buildings, including the Apparel Mart in downtown Atlanta. AmericasMart entered into agreements with Defender under which Defender provided janitorial services to the Apparel Mart and other of AmericasMart's buildings. As an invitee traversing one of the lobbies at the Apparel Mart around lunchtime on August 7, 2003, Taylor slipped and fell on a foreign liquid substance and sustained serious injuries to his knee. He charges AmericasMart and Defender with negligent breach of their legal duty to keep the premises safe.

Finding no legal duty owed by Defender to Taylor, the trial court granted Defender's motion for summary judgment. At trial, the jury returned a verdict in favor of AmericasMart. Taylor appeals following entry of judgment on the verdict. He contends that the trial court erred in granting Defender's motion for summary judgment and in refusing to give one of his requested jury instructions. We find no error in either action of the trial court and affirm.

The agreement between AmericasMart and Defender in effect at the time of Taylor's fall required Defender to furnish janitorial and maintenance services for the Apparel Mart in accordance with cleaning specifications and rules and regulations set forth in the agreement. Under the rules, Defender recognized that from time to time it might be called upon to perform at a level above and beyond that which was normally expected; and it agreed that the cleaning specifications were general guidelines from which deviations might be required.

Under the agreement, Defender was required to carry "broad form public liability insurance including coverage for personal injury" and to indemnify and defend AmericasMart against all claims of any kind — specifically including those relating to personal injuries — actually, allegedly, directly, or indirectly arising out of its performance of the contract. The cleaning specifications required Defender to "police" lobby areas four times daily. As understood by the

parties, policing included emptying trash cans, cleaning floors, and inspecting floors for fallen objects or liquid spills in order to remove hazards and keep the building clean. AmericasMart presented evidence showing that it had employees on-site who either took remedial action themselves or contacted Defender personnel if they saw foreign substances on the floors. The AmericasMart employees did not, however, regularly patrol the premises. Testimony given by Defender's employees showed that Defender had a practice or policy of policing the area where Taylor fell every 15 or 20 minutes around lunchtime (notwithstanding the less stringent requirement of the parties' written agreement), at least in part because there were numerous restaurants there. On the day in question, however, the area was last policed 25 to 30 minutes before Taylor's fall. Taylor presented expert testimony that practices and procedures utilized in the commercial building industry require inspection of the restaurant area of the AmericasMart building where Taylor fell, at the time he fell, at least every 15 minutes.

Defender moved for summary judgment, arguing that as an independent contractor providing janitorial services, as opposed to an owner or occupier of the premises, it owed no duty to Taylor to keep the premises safe. Defender also argued that the evidence showed without dispute that it had performed its contractual duties in a nonnegligent manner. In response, Taylor argued that AmericasMart's invitees were third-party beneficiaries of the janitorial contract between Defender and AmericasMart and that, under both Defender's contract with AmericasMart and § 324A of the Restatement of Torts (Second), Defender had assumed a duty to invitees of AmericasMart. Accepting Defender's arguments and rejecting Taylor's, the trial court awarded summary judgment to Defender.

The case proceeded to trial with AmericasMart as the sole defendant. The trial court instructed the jury that a premises owner has a nondelegable duty to use ordinary care to keep the premises safe and that, while the owner may employ a third party to perform its duties, the owner is still responsible if the duty to exercise reasonable care is not met by the owner or the third party employed by the owner. The court further instructed the jury that in order to recover for injuries sustained in a slip-and-fall accident, an invitee must prove that the premises owner or occupier had actual or constructive knowledge of the hazard. In accordance with cases such as *J. H. Harvey Co. v. Reddick*,[1] the trial court charged the jury that constructive knowledge of a foreign substance could be shown (1) by evidence that the substance had been on the floor for a sufficient

---

[1] 240 Ga. App. 466, 470 (1) (b) (522 SE2d 749) (1999).

period of time that in the exercise of ordinary care the defendant should have noticed and removed the hazard, or (2) by evidence that the defendant had an employee in the immediate area of the hazard who could have easily seen and removed it before plaintiff's fall. Under the authority of cases such as *KMart Corp. v. Jackson*,[2] Taylor requested a jury instruction on another recognized method of establishing constructive knowledge, i.e., through the owner or occupier's failure to show that it had a reasonable inspection program in place and that the program was actually carried out at the time of the incident. Over objection by Taylor, the court refused to give the requested charge.

1. We find no error in the trial court's grant of Defender's motion for summary judgment.

(a) The trial court did not err in finding no basis for Taylor to hold Defender liable for damages for personal injuries as a third-party beneficiary of Defender's contract with AmericasMart.

> OCGA § 51-3-1 imposes upon an owner or occupier of land the nondelegable duty to exercise ordinary care to keep the premises and approaches safe for invitees. In the case sub judice, [Defender] is neither the owner nor the occupier of the [Apparel Mart]. Likewise, [Taylor] was not [Defender's] invitee. Rather, [Defender] was merely an independent contractor which agreed to provide certain cleaning services in the building where [Taylor] fell. Consequently, OCGA § 51-3-1 imposes on the janitorial service no independent duty to inspect the premises of the occupier for the safety of the occupier's invitees.[3]

"Moreover, an agent is ordinarily not liable for mere nonfeasance."[4] "Even so, when the law imposes a duty to the public, an independent contractor may contractually assume such duty, so that a breach of the contractual duties may give rise to damages for personal injury."[5] But

> [i]n order for a nonparty to have standing to enforce a contract as a third-party beneficiary . . . , it must clearly

---

[2] 239 Ga. App. 176, 177-178 (521 SE2d 93) (1999).

[3] *Greene v. Piedmont Janitorial Svcs.*, 220 Ga. App. 743, 744 (2) (470 SE2d 270) (1996) (citations omitted).

[4] Id. (citations and punctuation omitted); compare *Kelley v. Piggly Wiggly Southern*, 230 Ga. App. 508, 509 (1) (496 SE2d 732) (1997) (contractors providing cleaning services for grocery store may be liable to customer who slipped and fell in puddle of liquid applied to floor by contractors).

[5] *R & S Farms v. Butler*, 258 Ga. App. 784, 786 (575 SE2d 644) (2002) (footnote omitted).

appear that one party to the contract promised another party to the contract to render some performance to the nonparty to the contract. Further, it must appear that both parties to the contract intended that the contract benefit the nonparty.[6]

Or, stated a slightly different way, in personal injury cases, an injured party may not recover as a third-party beneficiary for failure to perform a duty imposed by a contract unless it is apparent from the language of the agreement that the contracting parties intended to confer a direct benefit upon the plaintiff to protect him *from physical injury*.[7]

In any event, however, "[w]here an independent contractor or supplier properly executes the directions of the owner, only the owner, not the contractor or supplier, may be liable for injury to a third party resulting therefrom."[8]

In *Walls, Inc. v. Atlantic Realty Co.*,[9] an indemnification provision in a contract specifically provided that the contract was solely for the benefit of the signatories. *Walls* held, therefore, that there could be no third-party beneficiaries.[10] *Walls* is distinguishable, because the indemnity provision in this case contains no exclusionary language like the one in *Walls*. In *R & S Farms v. Butler*,[11] as here, a business invitee who slipped and fell on a liquid foreign substance brought a personal injury suit naming as a co-defendant the janitorial service employed by the premises owner. We held that the janitorial services contract provided for nothing more than the cleaning of the store and thus did not suggest that the parties intended to protect third parties from physical injury. *R & S Farms* is also distinguishable because the contract between Defender and AmericasMart required Defender to inspect as well as clean the premises and to carry liability insurance coverage for personal injuries. Whether Taylor can sue Defender as a third-party beneficiary of its contract with AmericasMart is, therefore, arguable.

---

[6] *Vaughn, Coltrane & Assoc. v. Van Horn Constr.*, 254 Ga. App. 693, 694 (563 SE2d 548) (2002) (citations omitted).

[7] *R & S Farms*, supra, 258 Ga. App. at 787 (punctuation and footnote omitted; emphasis in original).

[8] *McCaskill v. Carillo*, 263 Ga. App. 890, 891 (1) (589 SE2d 582) (2003) (citations omitted).

[9] 186 Ga. App. 389 (367 SE2d 278) (1988).

[10] Id. at 392 (1).

[11] Supra.

But even assuming that Taylor has standing to sue Defender as a third-party beneficiary, the only contractual duty arguably assumed by Defender in keeping the premises safe for invitees was to police four times daily the area of the building where Taylor fell. Although the contract did envision Defender being required to perform at a level above and beyond that required by the written agreement, and although Defender in fact undertook to police the area with greater regularity than that required by the agreement, there is no evidence that AmericasMart required Defender to do that. The evidence is therefore insufficient to show that Defender contractually assumed such a duty or that Defender did anything other than properly execute the directions of AmericasMart. That being the case, Taylor cannot hold Defender liable under a third-party beneficiary theory.

(b) The trial court did not err in finding § 324A of the Restatement of Torts (Second) inapplicable here.

Section 324A provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.[12]

"According to the official comment which follows § 324A, subparagraph (a) of the section applies only in those situations where the actor's negligent performance of his duty or undertaking exposes the injured person to a greater risk of harm than had existed previously."[13] "The official comment limits the application of subparagraph (b) to those situations where the alleged tortfeasor's performance is to be substituted completely for that of the party on whose behalf the undertaking is carried out."[14] Indisputably, neither subparagraph (a) nor (b) applies. Under subparagraph (c) of § 324A, which Taylor argues does apply, Georgia courts have recognized that where an insurance company performs safety inspections at its

[12] *Huggins v. Aetna Cas. & Surety Co.*, 245 Ga. 248, 249 (264 SE2d 191) (1980).
[13] *Huggins v. Standard Fire Ins. Co.*, 166 Ga. App. 441, 442 (304 SE2d 397) (1983) (citation omitted).
[14] Id. (citation omitted).

insureds' business premises, an injured employee of the insured may sue the insurer for negligent performance of the inspections if either the employer or employee relied on the inspections in ensuring the personal safety of the employee.[15] There is no evidence that AmericasMart relied on anything other than Defender's agreement to police the lobby areas of the Apparel Mart four times daily. The evidence indisputably shows that Defender protected that undertaking, policing the area even more often than required under the contract specifications or any oral directives from AmericasMart. There is no evidence that Defender failed to exercise reasonable care in so doing. If the area in question should have been inspected more frequently than it was at the time in question, the legal duty breached is chargeable to AmericasMart and not Defender under the facts of this case.

(c) We find no merit in Taylor's argument that under *Sutton v. Winn Dixie Stores*,[16] Defender can be held liable for negligent performance of a duty voluntarily assumed. *Sutton* does hold that "when an owner/occupier undertakes to perform a duty, whether voluntarily or as mandated under OCGA § 51-3-1, reasonable care must be exercised to make the premises safe through such acts."[17] But the cases cited by *Sutton* as authority for that proposition base their decisions on considerations set forth in § 324A. Moreover, by its terms, the broad holding in *Sutton* applies only to a premises owner/occupier (and thus not to an independent contractor).

2. The trial court did not err in refusing to give Taylor's requested jury instruction.

As held in *KMart Corp. v. Jackson*,[18] "[c]onstructive knowledge can be established in one of two ways: by evidence that an employee was in the immediate area of the hazard and could easily have discovered and removed it, or by showing that the owner did not use reasonable care in inspecting the premises."[19] With regard to the second method, *Jackson* holds that a jury "may infer" constructive knowledge unless the owner or occupier of the premises shows "not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident."[20] Taylor asked the trial court to instruct the jury that an owner "will be considered to have" constructive knowledge of a foreign substance if

---

[15] See *Huggins v. Aetna Cas. & Surety Co.*, supra; *Cleveland v. American Motorists Ins. Co.*, 163 Ga. App. 748, 749-751 (1) (295 SE2d 190) (1982).

[16] 233 Ga. App. 424 (504 SE2d 245) (1998).

[17] Id. at 425 (citations omitted).

[18] Supra.

[19] 239 Ga. App. at 177 (citation and punctuation omitted).

[20] Id. at 178 (citation and punctuation omitted).

it is shown that he did not have in place, or did not follow, a reasonable inspection procedure at the time of the incident. Because the quoted portion of the requested charge was incorrect, denial of the charge was proper.[21]

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED AUGUST 20, 2007 —
RECONSIDERATION DENIED SEPTEMBER 14, 2007.

*Nall & Miller, Kenneth P. McDuffie,* for appellant.
*Drew, Eckl & Farnham, Douglas K. Burrell, Webb, Zschunke, Neary & Dikeman, Dennis J. Webb, Jeffrey S. Kowalski,* for appellees.

---

[21] *Roberts v. Chapman,* 228 Ga. App. 365, 367 (2) (492 SE2d 244) (1997).